UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RANDOLPH D. BENDO, JENNILYN L.
MUNDA, WINNIE Q. GO, CHRISTIAN M.
GARCIA,

                                Plaintiffs,

                                             **REPORT**
                                             **AND RECOMMENDATION**
                                           12-CV-5367 (DRH) (AYS)

          -against

MELODY T. BAUTISTA, CHRISTOPHER
BAUTISTA, MAMARONECK PHYSICAL
THERAPY, P.C.,

                                Defendants.
-------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      Plaintiffs Randolph D. Bendo, Jennilyn L. Munda, Winnie Q. Go and Christian M.

Garcia ("Plaintiffs") bring this action on behalf of themselves, and other similarly situated and

current employees who worked or are working for Melody T. Bautista, Christopher Bautista and

Mamaroneck Physical Therapy. P.C. ("Defendants") and who allegedly were not properly paid

regular and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et

seq. ("FLSA"), and the New York Labor Law (NYLL") § 650 et seq.

      This case was commenced on October 25, 2012. See Compl. Docket Entry ("DE") [1].

Defendants failed to answer and Plaintiffs thereafter requested entry of a certificate of default.

The Clerk of the Court has issued that certificate, and Plaintiffs have moved for an entry of

judgment thereon. Presently before this Court is the District Court's referral of the Plaintiffs'

motion for issuance of a Report and Recommendation as to whether Plaintiffs have established

Defendants liability such that the motion should be granted, and if so, to determine the

appropriate amount of damages, costs, and/or fees, if any to be awarded. For the reasons set forth below, this Court recommends entry of judgment on behalf of the Plaintiffs and a judgment awarding damages in the amount of $183,957.50 consisting of $63,040.24 in damages to Bendo, $58,707.02 in damages to Munda, $46,480.30 in damages to Go, $15,379.94 in damages to Garcia, and $350 in costs as well as post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. This Court further recommends that Plaintiffs' request for attorneys' fees be denied without prejudice to renewal.

BACKGROUND

The following facts adduced from the Plaintiffs complaint, the affidavit of Randolph D. Bendo, the affidavit of Jennilyn L. Munda, the affidavit of Winnie Q. Go, the affidavit of Christian M. Garcia, and the exhibits attached thereto are undisputed and taken as true for the purposes of deciding this motion. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp. 973 F.2d 155, 158 (2d Cir. 1992).

A.    General Factual Background

Defendant, Mamaroneck Physical Therapy, P.C. ("Mamaroneck PT") is a domestic professional corporation organized under the laws of the state of New York. See Compl. ¶ 16. Defendant Mamaroneck PT maintained and operated its business at 82-02 Grand Avenue, Suite 1C, Elmhurst, NY 11373 (the "Elmhurst Facility) and maintained and operated additional facilities located at 132-35 41st Road, Suite 1A, Flushing, NY 11355 ("Flushing Facility"), at 125 Franklin Avenue, Valley Stream, NY 11580 ("Valley Stream Facility"), and at 113-11 Jamaica Avenue, Richmond Hill, NY 11418 ("Richmond Hill Facility"). See Compl. ¶ 17. Individual Defendants, Melody Bautista and Christopher Bautista are both officers and agents of Defendant

Mamaroneck PT. See Compl. ¶ 12-14.

Since 2003, Defendant, Mamaroneck PT, has rendered physical therapy services to patients of its own clinics located at the Flushing and Elmhurst Facilities, and has provided physical therapy services to patients of its client-facilities, such as the Valley Stream and Richmond Hill Facilities. See Compl. ¶ 27. Defendants Melody Bautista and Christopher Bautista and Mamaroneck PT hired the services of physical therapists, physical therapy aides, and other therapists, including the Plaintiffs, to perform physical therapy and related services at their facilities. See Compl. ¶ 28.

B.     Factual Background Specific to Plaintiffs Work as Employees of Defendants

I.     Randolph D. Bendo

Defendants hired the services of Plaintiff Richard D. Bendo ("Bendo") as a physical therapist to work at the Defendants' Valley Stream Facility on or about June 15, 2010. See Compl. ¶ 29, 35. Bendo was hired at a rate of $30.00 per hour, which was increased to $40.00 in October 2010. See Compl. ¶ 29. Defendants required Bendo to work 8 A.M. to 7 P.M. on Mondays, Wednesdays and Fridays, and from 9 A.M. to 7 P.M. on Tuesdays and Thursdays, and from 9 A.M. to 1 P.M. on Saturdays. See Compl. ¶ 34. On average, Bendo worked about 57 hours per week from the time he was hired by the Defendants until the end of his employment. See Bendo Aff. ¶ 10.

Bendo worked 57 hours per week starting from April 1, 2012 through June 23, 2012, see Bendo Aff. ¶ 10, and should have been paid $2,280 per week, or the total of $27,360 for all the physical therapy services that he provided. Id. Defendants failed to pay those wages as well as any overtime wages. Id. Because Bendo was not paid for almost three months, he terminated his employment with the Defendants on June 23, 2012. See Bendo Aff. ¶ 13.

II.    Jennilyn L. Munda

Defendants hired the services of Plaintiff Jennilyn L. Munda ("Munda") as a physical therapist to work at the Valley Stream facility on or about August 23, 2010. See Munda Aff. ¶¶ 3, 5. Munda was hired at a rate of $30.00 per hour. See Munda Aff. ¶ 3. Defendants required Munda to work from 8 A.M. to 7 P.M. on Mondays, Wednesdays and Fridays, and from 9 A.M. to 7 P.M. on Tuesdays and Thursdays, and also from 9 A.M. to 1 P.M. on Saturdays. See Compl. ¶ 34. On average, Munda worked 57 hours per week, every week from the time she was hired by the Defendants until the end of her employment. See Munda Aff. ¶ 7.

Starting from March 5, 2012 through June 23, 2012, Munda worked on average of 57 hours per week, Id., and should have been paid $25,431.65 for the physical therapy services that were provided. Defendants failed to pay those wages as well as overtime wages. See Munda Aff. ¶ 12.  Because Munda was not paid for more than three months, she terminated her employment with the Defendants on June 23, 2012. See Munda Aff. ¶ 15.

III.   Winnie Q. Go

Defendants hired the services of Plaintiff Winnie Q. Go ("Go") as a physical therapist to work at the Defendants Flushing facility, Valley Stream facility and Richmond Hill facility on or about August 7, 2012. See Go Aff. ¶ 3, 5. Go was hired at a rate of $45.00 per hour, which was increased to $50.00 per hour in January 2012. See Go Aff. ¶ 3. Defendants required Go to work from 8 A.M. to 5 P.M. on Mondays, Tuesdays, Wednesdays and Fridays, and from 9 A.M. to 7 P.M. on Thursdays, and also from 9 A.M. to 4 P.M. on Saturdays. See Go Aff. ¶ 7. On average, Go worked 52 hours per week, every week, from the time she was hired by the Defendants, until the end of her employment. Id.

Starting from April 29, 2012 through June 23, 2012, Go worked on average of 52 hours

per week, <u>see</u> Go Aff. ¶ 10, and should have been paid $2,600 per week, or the total of $20,800 for all the services that were provided. <u>Id.</u> Defendants failed to pay those wages as well as any overtime wages. <u>Id.</u> Because Go was not paid for two months, she terminated her employment on July 8, 2012. <u>See</u> Go Aff. ¶ 14.

       IV.    <u>Christian M. Garcia</u>

Defendants hired the services of the Plaintiff Christian M. Garcia as a physical therapy aide at the Defendants Richmond Hill facility on or about November 18, 2010.  <u>See</u> Garcia Aff. ¶¶ 3, 5. Garcia was hired at a rate of $20.00 per hour. <u>See</u> Garcia Aff. ¶ 3. Defendants required Garcia to work from 8 A.M. to 7 P.M. on Mondays, Tuesdays, Wednesdays, Thursdays and Fridays, and from 9 A.M. to 1 P.M. on Saturdays. <u>See</u> Garcia Aff ¶ 7. On average, Garcia worked 56 hours per week, every week from the time he was hired by the Defendants until the end of his employment. <u>Id.</u>

Starting from May 14, 2012 through June 23, 2012, Garcia worked on average of 56 hours per week, <u>see</u> Garcia Aff. ¶ 10, and should have been paid $1,120 per week, or the total of $6,720 for all the services provided. <u>Id.</u> Defendants failed to pay those wages, as well as any overtime wages. <u>Id.</u> Because Garcia was not paid for eight weeks, he terminated his employment on June 23, 2012. <u>See</u> Garcia Aff. ¶ 13.

c.    <u>Procedural History</u>

Plaintiffs commenced this action on October 25, 2012. <u>See</u> Compl. On November 5, 2012, a summons was issued to all Defendants. DE [2]. On November 9, 2012, the summons and complaint were served on Defendant Melody Bautista, Defendant Christopher Bautista and Defendant Mamaroneck PT. DE [4].

The Defendants never responded or moved in response to the complaint. On January 18,

2013 the Plaintiffs requested an entry of certificate of default. See DE [6]. The Plaintiffs' request

for certificate of default was denied because the affidavit did not specify whether or not the

defendants were an infant, in the military, or incompetent. See DE dated 1/22/2013. On January

22, 2013, the Plaintiffs again requested a certificate of default. DE [7].  The Clerk of the Court

noted the Defendants default on January 22, 2013. DE [8].

On August 12, 2013, the case was stayed for bankruptcy proceedings. See DE dated

8/12/2013. On March 10, 2016, the bankruptcy stay was lifted. See DE dated 3/10/2016.

Plaintiffs thereafter moved for an entry of a judgment of default, DE [16], which motion was

referred to this Court for Report and Recommendation. See referral order, DE [24].

<u>DISCUSSION</u>

I.    <u>Legal Principles</u>

A.    <u>Standards Applicable to Damages Award Following Default Judgment</u>

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil

Procedure, which provides for a two-step process. See Fed. R. Civ. P. 55; <u>Priestley v.</u>

<u>Headminder, Inc.</u>, 647 F.3d 497, 504-05 (2d Cir. 2011). First, the moving party must obtain a

certificate of default from the Clerk of Court. Fed. R. Civ. P. 55(a). Once the certificate is issued,

the moving party may apply for entry of a judgment of default. <u>Id</u>. Rule 55(b).

In the context of a default, the well-pleaded factual allegations set forth in the complaint relating

to liability are deemed true. See <u>Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.</u>, 973

F.2d 155-58 (2d Cir. 1992). A plaintiff is not, however, entitled to a default judgment as a matter

of right just because a party is in default. Rather, the court must determine whether the well-

plead allegations establish liability as a matter of law. See <u>City of New York v. Mickalia Pawn</u>

<u>Shop, LLC</u>, 645 F.3d 114, 137 (2d Cir. 2011). If liability is established, the court turns to

ascertain damages "with reasonable certainty." Credit Lyonnais Sec., Inc. v. Alcanture, 183 F.3d

151, 155 (2d Cir. 1999). A hearing is not necessarily required and affidavits are sufficient as long

as the Court can ensure that there is a basis for the damages sought by way of the proposed

default judgment. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109

F.3d 105, 111 (2d Cir. 1997).

B.     Liability

    1.     Fair Labor Standards Act

    In order to make a prima facie case of a violation of the minimum wage and overtime

provisions of the FLSA, the plaintiff must adequately prove that he or she is 1) personally

engaged in interstate commerce or in the production of goods for interstate commerce; or 2)

employed in an enterprise engaged in interstate commerce or in the production of goods for

interstate commerce. Shim v. Millennium Group, 2009 WL 211367, at * 2 (E.D.N.Y. Jan. 28,

2009); see also 29 U.S.C. §§ 2069(a), 207(a). Individual coverage does not apply, as Plaintiffs do

not allege that they were personally performing work related to the movement of persons or

things between states. See 29 C.F.R. § 779.103. Enterprise coverage, however, does apply.

Under the FLSA, an "enterprise engaged in commerce" is defined as an enterprise that has

"employees engaged in interstate commerce or the production of goods for interstate commerce,

or that has employees handling, selling or otherwise working on goods or materials that have

been moved in or produced for interstate commerce," and "whose annual gross volume of sales

made or business done is not less than $500,000."  29 U.S.C. §§ 203(s)(1)(A). Courts have held

that "virtually every enterprise in the nation doing the requisite dollar volume of business is

covered by the FLSA." Archie v. Grand Cent. Partnership, Inc. 997 F. Supp. 504, 530 (S.D.N.Y.

1998) (quoting Dunlap v. Indus. Am. Corp., 516 F.2d 498, 501-02 (5th Cir. 1975)).  Even "local

business activities fall within reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced out of state." Id. at 530. Therefore, the test is whether employees of the enterprise handle supplies or equipment that originated out of state. It is inconceivable that none of the medical or office supplies used at Mamaroneck PT facilities originated outside of the state of New York. See e.g. Shim, 2009 WL 211367 at * 3 (holding that employees handled goods or materials moved in interstate commerce because "it is inconceivable that none of the medical supplies originated out of state."); Monaia v.Grinell,1997 WL 363813, at * 2 (S.D.N.Y. July 1, 1997) (holding that a podiatrist's single state practice was covered by the FLSA where "medical supplies used to treat patients were purchased out of state."). Plaintiff's complaint, therefore, fairly alleges that the Defendants are an enterprise engaged in commerce and, consequently, provides that the Plaintiffs are covered under the FLSA.

All Plaintiffs allege violations of the FLSA's minimum wage provision, which states that every employer shall pay to each of his employees…not less than…$7.25 an hour." 29 U.S.C. § 206 (a)(1)(C). All Plaintiffs allege that Defendants did not comply with the statutory minimum wage for all hours worked. See Compl. ¶ 66-69. Bendo alleges that Defendants willfully failed to pay him any wages over a three-month pay period. See Bendo Aff. ¶ 10. Munda alleges that she should have been paid $26,827 over a three-month pay period, however, she was only paid $1,395.35. See Munda Aff. ¶ 11. Go alleges that Defendants willfully failed to pay her any wages over a two-month pay period. See Go Aff. ¶ 10. Similarly, Garcia alleges that Defendants willfully failed to pay him any wages over an eight-week pay period. See Garcia Aff. ¶ 10. Plaintiffs have therefore sufficiently pled a violation of 29 U.S.C. § 206.

All Plaintiffs also allege violations of the FLSA's overtime provision, which states that,

"no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). All Plaintiffs allege that Defendants required them to work in excess of 40 hours per week without paying them proper overtime wages. See Compl. ¶ 44. Therefore, Plaintiffs have sufficiently pled a violation of 29 U.S.C. § 207.

       2.   New York Labor Law

The New York Labor Law is similar to the FLSA in that it requires employers to pay a minimum hour wage to employees, as well as mandates an overtime compensation scheme. N.Y. Lab. Law. § 650 et seq.; see Gunawan, 897 F. Supp. 2d at 84 ("the NYLL mirrors the FLSA in most but not all respects"). All Plaintiffs allege Defendants willfully failed to pay Plaintiffs their regular wages as well as overtime pay at the rate of one and one half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of NYLL § 190 et seq. See Compl. ¶ 74. Because the complaint alleges that the Defendants failed to pay the Plaintiffs any wages, as well as over time wages, for the relevant pay period, see Compl. ¶ 46, Plaintiffs have adequately alleged a violation of N.Y. Lab. Law. § 190 et seq.

II.   Damages

Although this Court must accept as true the well-pleaded allegations within Plaintiffs' complaint as to Defendants' liability, this Court need not give the same deference to Plaintiffs' allegations regarding damages. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Instead, this Court must perform an inquiry to determine the extent of damages to a reasonable certainty. See Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

An employee bringing an action for unpaid wages under the FLSA has the burden of proving that he performed work for which he was not compensated. Grochowski v. Phoenix Constr. Ypsilon Const. Corp., 318 F.3d 80, 87 (2d Cir. 2003). Under both the FLSA and the NYLL, an employer is required to maintain "records of the wages, hours and persons employed by him." Rodriguez v. Queens Convenience Deli Corp., 2011 WL 4962397, at *2 ( E.D.N.Y. Oct. 18, 2011). (citing Wicaksono v. XYZ 48 Corp., 2011 WL 2022644, at *5 (S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). Here, Defendants, having defaulted, have failed to provide the requisite records. Therefore, a plaintiff may meet his or her burden of establishing how many hours he or she worked by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. Grochowski, 318 F.3d at 87. A plaintiff may do so by his or her recollection. Doo Wam Yang v. SCBL Corp. 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). In this case, Plaintiffs have submitted affidavits detailing their employment, specifically, the number of hours worked and the compensation that should have been received.

    A.    Minimum Wage

Both State and Federal Law mandate that employees be paid at least a minimum hourly rate for every hour that they work. 29 U.S.C. § 206(a); N.Y. Lab. Law. § 652. In this case there is no question that the Defendants failed to pay each Plaintiff the minimum hourly wage. Each Plaintiff has worked over 40 hours per week during the relevant pay period and received no compensation from the Defendants. See Bendo Aff. ¶ 10; Munda Aff. ¶ 11; Go Aff. ¶ 10; Garcia Aff. ¶ 10.

    B.    Overtime Compensation

Under both the FLSA and the NYLL employers are required to pay employees for any

hours over forty worked each week at the regular rate for which they are employed. <u>See</u> 29 U.S.C. § 207(a)(1) (mandating that an employee who works in excess of forty hours per week must be paid for the excess hours at a premium overtime rate); <u>See</u> 29 C.F.R. § 778.110(a) ("For overtime hours of work, the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one half the hourly rate by the number of hours worked in excess of 40 in the week."). The Plaintiffs have demonstrated that they have worked well in excess of 40 hours during each week that they were employed by the Defendants. <u>See</u> Bendo Aff. ¶ 9; Munda Aff. ¶ 9; Go Aff. ¶ 9; Garcia Aff. ¶ 9. Therefore, Plaintiffs are entitled to one and one half times their regular wage rate for any hours in excess of forty worked each week.

C.    <u>Liquidated Damages</u>

Plaintiffs are entitled to liquidated damages pursuant to the FLSA. Under the FLSA, an employer who violates the minimum wage and overtime compensation requirements is liable for "an additional equal amount as liquidated damages" unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful. 29 U.S.C. §§ 216(b), 260. As a result of the Defendants default in this action, the record is devoid of evidence of Defendants good faith or reasonable belief. Therefore, this Court recommends that liquidated damages be awarded under the FLSA.

D.    <u>Pre-judgment Interest</u>

Prejudgment interest is not available when an award of liquidated damages applies. As FLSA liquidated damages are meant to be compensatory and not punitive, there is no need to employ pre-judgment interest to restore plaintiffs to a position they would have otherwise enjoyed absent the wage protection violation. <u>See</u> <u>Overnight Motor Transp. Co. v. Missel</u>, 316

U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed 1982 (1942). Therefore, as FLSA liquidated damages are included in this recommendation; this Court will not award pre-judgment interest under the FLSA.

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and pre-judgment interest. Begum v. Ariba Discount, Inc., 2015 WL 223780 at * 3 (E.D.N.Y. Jan 16, 2015).  This dual availability occurs because New York State views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicate damage award. See Janus v. Regalis Const., Inc., 2012 WL 3878113 at * 8-9 (E.D.N.Y. July 23, 2012) (explaining that liquidated damages under the NYLL are meant to "constitute a penalty" on an employers willful withholding of wages due, while pre-judgment interest is meant "to compensate a plaintiff for the loss of use money."). The availability of both NYLL liquidated damages and pre-judgment interest "remains true even where liability is found not only under the NYLL, but also under the FLSA." Begum 2015 WL 223780, at * 3  (citing Thomas v. iStar Fin., Inc., 652 F.3d 141, 150 n. 7 (2d Cir. 2011).

The N.Y. C.P.L.R. provides that interest "shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004, and

> Computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. have "wide discretion in determining a reasonable date from which to award pre-judgment interest, Conway v. Icahn & Co. 16 F.3d 504, 512 (2d Cir. 1994), and interest is calculated using the simple rate, not a compounded rate, see Gortat v. Capala Bros., 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013)  ("'When unpaid

wages were incurred at various times, ... [s]imple prejudgment interest is calculated from a singular, midpoint date ... through the date judgment is entered'" (quoting Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341 at *11 (S.D.N.Y. May 14, 2012)); see also Coulibaly v. Millennium Super Car Wash, Inc., 2013 WL 6021668 at *15 (E.D.N.Y. Nov. 13, 2013) (using the midpoint of the claims to calculate pre-judgment interest).

Applying the reasonable intermediate date approach, a date will be selected for each Plaintiff representing the midpoint of the claims sought by the Plaintiff in this litigation. For Bendo, the midpoint date for the purposes of the NYLL pre-judgment interest calculation will be May 13, 2012, the midpoint between April 1, 2012 and June 23, 2012. For Munda, the midpoint date will be April 29, 2012, the midpoint between March 5, 2012 and June 23, 2012. For Go, the midpoint date will be May 27, 2012, the midpoint between April 29, 2012 and June 23, 2012. And for Garcia, the midpoint date will be June 3, 2012, the midpoint between May 14, 2012 and June 23, 2012.

III.    Plaintiffs' Individual Damages Calculations

        A.    Plaintiff Bendo's Damages Calculations

Bendo was employed by the Defendants from June 15, 2012 through June 23, 2012. Bendo Aff. ¶ 3. The Defendants willfully failed to pay Bendo any wages during a twelve-week period starting from April 1, 2012 through June 23, 2012. Bendo Aff. ¶ 10. At an hourly rate of $40.00 for 57 hours per week, this Court recommends that Defendants be ordered to pay Bendo $19,200 in unpaid minimum wages for hours worked up to 40 hours per week; $12,240 in overtime compensation for hours worked in excess of 40 hours per week; and $31,440 in liquidated damages under the FLSA, all of which totals $62,880.

In addition, this Court recommends that Defendants be ordered to pay Bendo pre-

judgment interest on $15,720 (the total of Bendo's compensatory damages under the NYLL: unpaid minimum wages, overtime premium pay, but not liquidated damages), calculated at a rate of 0.17307% per week from May 13, 2013 until June 23, 2012 (a span of 6 weeks). Multiplying the principle of $15,720 by the interest rate of 0.17307%, and by the time period of 6 weeks, the pre-judgment interest totals $163.24.

Thus the Court recommends awarding Bendo a total award of $63,040.24 in damages.

      B.     <u>Plaintiff Munda's Damages Calculations</u>

Munda was employed by the Defendants from August 23, 2012 until June 23, 2012. Munda Aff. ¶ 3,10. The Defendants willfully failed to pay Munda her full wages from March 5, 2012 through June 23, 2012. Munda Aff. ¶ 10. At an hourly rate of $30.00, this Court recommends that Defendants be ordered to pay Munda $19,200 in unpaid minimum wages for hours worked up to 40 hours per week; $11,448.60 in overtime compensation for hours worked in excess of 40 hours per week; and $29,253.25 in liquidated damages under the FLSA. Subtracting the $1,395.35 Munda was paid by Defendants during the relevant time period, the total is $58,504.50.

In addition, this Court recommends that the Defendants be ordered to pay pre-judgment interest on $14,626.63 (the total of Munda's compensatory damages under the NYLL: unpaid minimum wages, overtime premium pay, but not liquidated damages) calculated at a rate of 0.17307% per week from April 29, 2012 until June 23, 2012 (a span of 8 weeks). Multiplying the principle of $14,626.63 by the interest rate of 0.17307% and by the time period of 8 weeks, the pre-judgment interest totals $202.52.

Thus, the Court recommends awarding Munda $58,707.02 in damages.

C.      Plaintiff Go's Damages Calculations

Go was employed by the Defendants from August 7, 2010 through July 8, 2012. Go Aff.

¶ 3, 10. The Defendants willfully failed to pay Go any wages from April 29, 2012 until June 23,

2012. Munda Aff. ¶ 10. At an hourly rate of $50.00 for 52 hours per week, this Court

recommends the Defendants be ordered to pay Go $16,000 in unpaid minimum wages for hours

worked up to 40 hours per week; $7,200 in overtime compensation for hours worked in excess of

40 hours per week; and $23,200 in liquidated damages under the FLSA, all of which totals

$46,400.

In addition, this Court recommends that the Defendants be ordered to pay pre-judgment

interest on $11,600 (the total of Go's compensatory damages under the NYLL: unpaid minimum

wages, overtime premium pay, but not liquidated damages) calculated at a rate of 0.17307% per

week from May 27, 2012 until June 23, 2012 (a span of 4 weeks). Multiplying the principle of

$11,600 by the interest rate of 0.17307%, and by the time period of 4 weeks, the pre-judgment

interest totals $80.30.

Thus, the Court recommends awarding Go $46,480.30 in damages.

D.      Plaintiff Garcia's Damages Calculations

Garcia was employed by the Defendants from November 18, 2010 until June 23, 2012.

Garcia Aff. ¶ 3, 10. The Defendants willfully failed to pay Garcia any wages from May 14, 2012

though June 23, 2012. Garcia Aff. ¶ 10. At an hourly rate of $20.00 for 56 hours per week, this

Court recommends the Defendants be ordered to pay Garcia $4,800 in unpaid minimum wages

for hours worked up to 40 hours per week; $2,880 in overtime compensation for hours worked in

excess of 40 hours per week; and $7,680 in liquidated damages under the FLSA, for a total of

$15,360.

In addition, this Court recommends that the Defendants be order to pay pre-judgment interest on $3,840 (the total of Garcia's compensatory damages under the NYLL: unpaid minimum wages, overtime premium pay, but not liquidated damages) calculated at a rate of 0.17307% per week from June 3, 2012 through June 23, 2012 (a span of 3 weeks). Multiplying the principle of $3,840 by the interest rate of 0.17307%, and by the time period of 3 weeks, the prejudgment interest totals $19.94.

Thus, the Court recommends awarding Garcia $15,379.94 in damages.

IV.    Attorney's Fees

As a general matter in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro–North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee' ") (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir.2008)) (and following Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010)).

The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue, 130 S. Ct. at 1672 (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." Id. at 1673 (citation omitted); see Arbor Hill Concerned Citizens Neighborhood Assoc., 522 F.3d at 184, 190–91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a

reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Assoc., 522 F.3d at 190.

The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984), and the relevant community is generally the "district in which the court sits," Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir.1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y.2012), and this Circuit requires contemporaneous billing records for each attorney, see Scott v. City of New York, 643 F.3d 56, 57 (2d Cir.2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 130 S. Ct. at 1673.

The Plaintiffs seek $25,000 in attorney's fees for this litigation, however, they have not submitted any time records that show the date the work was done, the hours expended and the nature of the work. Without any documentation this Court cannot make a reasonable assessment and determination as to a reasonable fee, and therefore cannot, at this time, recommend awarding any attorney's fees to the Plaintiffs. This Court finds the documentation in support of Plaintiffs' request for attorneys' fees to be inadequate. The record is devoid of any documents detailing each attorney's level of experience or skill, claimed hourly rates hours expended.  Without such

information, this Court cannot accurately determine the reasonableness of the fees sought. See Blum, 465 U.S. at 895 n. 11 (emphasizing knowledge of the attorney's skill level, experience, and reputation is necessary to determine the reasonableness of a claimed rate). Thus, Plaintiffs have failed to meet their burden to submit sufficient evidence supporting the attorneys' fees sought. See Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d at 291.

As such, this Court recommends that Plaintiffs' counsel submit the appropriate documentation for such a fee request and renew their application.  Accordingly, this Court recommends that Plaintiffs' request for attorneys' fees be denied without prejudice to renewal.

V.      Costs

Both the FLSA and New York State Law Provide for an award of costs. See 29 U.S.C. § 216(b); N.Y. Lab. Law. § 198(4). Here, Plaintiffs request costs of $350 for the court-filing fee. This Court finds these costs to be reasonable.

VI.     Post-Judgment Interest

28 U.S.C. states that "interest shall be allowed on any money judgment in a civil case recovered in district court." 28 U.S.C. 1961(a). The language of 28 U.S.C 1961 ensures that an award of post-judgment interest in any civil case where money damages are recovered. Duffy v. Oyster Bay Indus., Inc., 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011); see also Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("the award of post-judgment interest is mandatory on awards in civil cases as the date judgment is entered). Therefore, this Court respectfully recommends that the District Judge order Defendants to pay Plaintiffs post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

<u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion for a default judgment be granted and that the District Court direct the Clerk of Court to enter judgment in favor of Plaintiffs and against Defendants in the total amount of $183,957.50, consisting of $63,040.24 in damages to Bendo, $58,707.02 in damages to Munda, $46,480.30 in damages to Go, $15,379.94 in damages to Garcia, and $350 in costs as well as post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. This Court further recommends that Plaintiffs' request for attorneys' fees be denied without prejudice to renewal.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to Plaintiffs' counsel via ECF. Furthermore, the Court directs Plaintiffs' counsel (1) to serve a copy of this Report and Recommendation by first class mail to Defendants at their last known addresses, and (2) to file proof of service on ECF within two days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the 14 day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty</u>., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Central Islip, New York                    /s/ Anne Y. Shields
August 30, 2017                            Anne Y. Shields
                                           United States Magistrate Judge